DANIAL LAIRD, ESQ.
Nevada State Bar No. 11831
**LAIRD LAW PLLC**
8991 West Flamingo Road, Suite C
Las Vegas, Nevada 89147
*Telephone:* (702) 202-3091
*Facsimile:* (702) 202-1992
*Email:* Dan@LairdLaw.com
www.LairdLaw.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JAMES LEONARD WATERS, JR., <br><br> Plaintiff, <br> vs. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** |

**COMES NOW** Plaintiff JAMES LEONARD WATERS, JR., individually, by and through his attorney of record, DANIAL LAIRD, ESQ., of LAIRD LAW PLLC, for his Complaint against defendant, alleges as follows:

## PARTIES

1. Plaintiff JAMES LEONARD WATERS, JR. is a resident of Clark County, Nevada.

2. Defendant, the United States of America, may be served by delivering a copy of the Summons and Complaint to the United States Attorney for the District of Nevada.

## JURISDICTION, SERVICE, AND VENUE

3. This Federal District Court has subject-matter jurisdiction over this lawsuit under U.S. Const., Art. 3, §2, cl. 1, and 28 U.S.C. §1346(b), 2671-80, commonly known as the Federal Tort Claims Act, which vests exclusive subject-matter jurisdiction of the Federal Tort Claims Act in Federal District Court.

4. Venue of this suit is proper herein because the acts, events, or omissions giving rise to these claims occurred in Las Vegas in the District of Nevada under 28 U.S.C. §1391.

5. The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on Mr. Christopher Chiou, the Acting United States Attorney for the District of Nevada, by certified mail, return receipt requested at his office:

> U.S. Attorney's Office District of Nevada
> ATTN: Civil Process Clerk
> 501 Las Vegas Boulevard South, Suite 1100
> Las Vegas, Nevada 89101

6. Service is also affected by serving a copy of the Summons and Complaint on Merrick B. Garland, Attorney General of the United States, by certified mail, return receipt requested at:

> The Attorney General's Office
> U.S. Department of Justice
> ATTN: Civil Process Clerk
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

## CONDITIONS PRECEDENT

7. Plaintiff pleads pursuant to 28 U.S.C. §2672 and 2675(a) that the claims set forth meet all jurisdictional prerequisites, including timely administrative presentment. Plaintiff timely presented these claims in writing to: 1) William J.

Caron, Director, VA Southern Nevada Healthcare System, 6900 North Pecos Road, North Las Vegas, Nevada 89085; 2) Office of Chief Counsel, San Francisco VA Medical Center, 4150 Clement Street, San Francisco, California 94121; and 3) Office of the General Counsel, Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, D.C. 20420. The administrative claims were received on or about May 20, 2020, and receipt of same was acknowledged on June 4, 2020.

8. The United States made a final disposition of this matter on March 24, 2021, in writing by certified mail after the parties failed to successfully negotiate a settlement.

9. Accordingly, pursuant to 28 U.S.C. §2675(a), Plaintiff has complied with all jurisdictional prerequisites and conditions prior to the commencement and prosecution of this suit.

10. Plaintiff's Standard Form 95 administratively presented to the United States and stated a "sum certain" of fifty million dollars ($50,000,000.00).

## FACTS

11. Plaintiff realleges and incorporates herein by reference paragraphs 1-10 and all other facts and allegations of this Complaint as though set forth fully herein.

12. Plaintiff was a Veteran who received medical care and treatment at the VA Southern Nevada Healthcare System (VASNHCS) for several years.

13. Plaintiff has a complex gastroenterological history due to his long-standing diagnosis of inflammatory bowel disease, specifically, Crohn's Disease.

14. On August 10, 2018, Plaintiff was scheduled to have an elective colonoscopy at the VASNHCS by Joseph M. Fayad, M.D. (Dr. Fayad).

15. Dr. Fayad was a VASNHCS employee, acting within the course and scope of his employment with the VASNHCS at all times that he provided professional services to Plaintiff.

16. John J. Eckert, P.A. was a VASNHCS employee acting within the course and scope of his employment with the VASNHCS at all times that he provided professional services to Plaintiff.

17. Plaintiff took the military shuttle to the VASNHCS facility and arrived approximately one hour early for his appointed procedure. While still in the military shuttle, Plaintiff received a telephone call from the VASNHCS Gastroenterology Suite, asking how long it would be until he arrived for his appointment because Dr. Fayad was running ahead of schedule.

18. Upon information and belief, Dr. Fayad prides himself on taking as little time as possible to perform patient evaluations and gastroenterological procedures on Veterans.

19. Once Plaintiff checked in for his colonoscopy appointment about one hour early, Dr. Fayad hurriedly completed a gastroenterological evaluation, performed an esophagogastroduodenoscopy (EGD or "upper GI endoscopy"), and then performed the colonoscopy within a very short period of time.

20. Dr. Fayad falsely recorded in Plaintiff's medical record that Plaintiff was twenty minutes late for his GI clinic consultation visit. Dr. Fayad also falsely recorded the Plaintiff was offered, and accepted, an "expedited visit/consult."

21. Based upon Plaintiff's long history of Crohn's disease and his complex medical history, a colonoscopy should have been performed only with extreme caution and care.

22. Despite such high risks of complications, upon information and belief, Dr. Fayad rushed through the colonoscopy and created a large perforation at the mid portion of the Plaintiff's sigmoid colon.

23. Upon waking from his colonoscopy, Plaintiff experienced extreme abdominal pain. He immediately told VA staff that he was at "12" on a ten-point scale.

24. VASNHCS personnel failed and refused to provide Plaintiff with pain medication and even told Plaintiff, "We don't give pain medication after colonoscopy."

25. Plaintiff then told Dr. Fayad the same, that he was at "12" on a ten-point scale. Dr. Fayad ignored Plaintiff's complaints of severe pain, refused to perform any diagnostic imaging such as an abdominal plain radiograph (that would have immediately identified and diagnosed the perforation), and demanded that Plaintiff be discharged without any pain medication.

26. Following the colonoscopy, Plaintiff continued to have extreme severe abdominal pain; Plaintiff informed VA personnel that he could not walk out of the building on his own and requested a wheelchair. VASNHCS eventually provided Plaintiff with a wheelchair and Plaintiff wheeled himself through the hospital to the pharmacy where he filled a prescription for antibiotics but no pain medication. VASNHCS personnel then left Plaintiff in a wheelchair telling him that he was discharged. VASNHCS personnel discharged Plaintiff from the hospital in a medically unstable condition, with acute peritonitis, in unimaginably severe pain and with no pain medication of any kind. Plaintiff contacted a family member to transport the Plaintiff to the Plaintiff's home.

27. Dr. Fayad breached the applicable standard of care, by among other things, ignoring Plaintiff's post-colonoscopy pain complaints. Colonoscopy patients rarely experience severe abdominal pain and rarely complain of more than mild gas pain or cramping following the procedure. Complaints of severe abdominal pain, such as that experienced by Plaintiff, indicated probable complications requiring further diagnosis, treatment, and follow-up care.

28. Plaintiff arrived at home and continued to suffer excruciating abdominal pain with no relief from over-the-counter medication. Due to the extreme severity of his abdominal pain, Plaintiff activated the Emergency Medical System by calling 911.

29. Plaintiff was emergently transported by ambulance to University Medical Center where an abdominal radiograph was taken, and Plaintiff was immediately diagnosed with a perforation of the gastrointestinal tract. Plaintiff underwent emergency surgery where physicians found a perforation in the mid-sigmoid colon with surrounding purulence, an area of necrosis at mid-jejunum, transverse colon dilated to 11 cm., and a stricture in the descending colon with point of internal hernia of the small intestine.

30. Due to the severity of the colonic perforation, surgeons had to perform a colostomy on Plaintiff. Plaintiff spent seventeen days in the hospital and suffered numerous other complications as a result of the bowel perforation by Dr. Fayad and the negligence of other VASNHCS personnel.

## FIRST CAUSE OF ACTION
## PROFESSIONAL NEGLIGENCE

31. Plaintiff realleges and incorporates herein by reference paragraphs 1-30 and all other facts and allegations of this Complaint as though set forth fully herein.

32. Defendant's employees and/or agents, including but not limited to, Dr. Fayad, John J. Eckert, P.A., owed a duty to act in the same manner as an ordinarily prudent physician, physician assistant, nurse practitioner, and health care provider, in the same or similar circumstance in caring for, diagnosing, and treating Plaintiff.

33. Defendant held itself and its employees and agents out to Plaintiff as providers of healthcare with the requisite training and experience and competent medical personnel, physician assistants, nursing personnel, and staff to properly care for, diagnose, and treat Plaintiff.

34. Defendant, by and through its VASNHCS physicians, physician assistants, nurse practitioners, and staff, owed Plaintiff a duty to provide reasonable and ordinary medical care and treatment to him according to the applicable standard of

care required of same or similar healthcare providers. (See the Declarations of Merit, pursuant to NRS 41A.071, of Board-Certified Gastroenterologist Joel Chodos, M.D., attached hereto as **Exhibit 1**; and Psychologist Michael Schatman, Ph.D., attached hereto as **Exhibit 2**).

35. The VASNCHS, Dr. Fayad, and John J. Eckert, P.A., and others, breached the standard of care, by among other things, by not further evaluating Plaintiff when he complained of severe abdominal pain after his EGD and colonoscopy. Even a simple diagnostic study, such as an abdominal radiograph, would have likely uncovered the perforation earlier than after discharge and at UMC. Earlier diagnosis would have allowed earlier treatment in a less ill/unstable patient.

36. Further, VASNCHS, Dr. Fayad, and John J. Eckert, P.A., and others, breached the standard of care, by among other things, by not accounting for Plaintiff's Crohn's disease and significant colon inflammation. Such conditions create a higher risk for a perforation than an average individual, and severe pain after a colonoscopy should alert a reasonable, prudent healthcare provider to the possibility of perforation.

37. Defendants VASNCHS, Dr. Fayad, and John J. Eckert, P.A., and others, breached the standard of care, by among other things, by not admitting Plaintiff to the hospital for further observation and by not obtaining a chest and/or abdominal x-ray following the colonoscopy.

38. As a result of all the breaches of standard of care listed above, Plaintiff suffered, among other things, severe pain (emotional response to perceived or actual tissue damage), extreme suffering, severe emotional distress, mental anguish, sepsis, shock, blood transfusions, pneumonia, depression, anxiety, chronic PTSD.

39. As a result of all the breaches of standard of care listed above, Plaintiff incurred past and future medical expenses, past and future hospital expenses, past and future lost income, in an amount in excess of $75,000.00.

40. It has become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is entitled to attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

41. Plaintiff realleges and incorporates herein by reference paragraphs 1-40 and all other facts and allegations of this Complaint as though set forth fully herein.

42. The most prominent and authoritative organization dedicated to the study of pain and pain relief is the International Association for the Study of Pain, I.A.S.P., a multinational medical and scientific organization headquartered in Washington, D.C.

43. Since 1979, IASP has promulgated a definition of "pain" that is unanimously accepted by physicians, scientists, and researchers worldwide. The world's body of medical research on pain medicine has been built on IASP's definition of "pain."

44. For more than 40 years, the IASP has defined "pain" as "an unpleasant sensory and emotional experience…"

> **1979 IASP Definition of Pain:**
> **An unpleasant sensory and emotional experience associated with actual or potential tissue damage, or described in terms of such damage.**

45. No matter what the physical cause, pain is ultimately an *unpleasant emotional experience*. Given that "pain" is medically and scientifically defined as an "emotional experience," pain can be intentionally inflicted on one human being by another by either or both of two ways:

      a.      Pain can be intentionally inflicted on a human patient by deliberately undertaking an action for the purpose of causing pain, that is, deliberately causing the victim to experience an unpleasant sensory and emotional experience;

      b.      Pain can be intentionally inflicted on a human being by deliberately failing to take interventions that would ameliorate, mitigate, or stop the unpleasant sensory or emotional experience that is pain.

46. It is well understood by healthcare providers that the pain of peritonitis is among the most severe pain a human being can experience. When the bowel or rectum is perforated, the air or carbon dioxide gas that was used to inflate the bowel escapes into the abdominal cavity and distends the abdomen. Additionally, harsh bile salts and other chemical irritants escape from the bowel or rectum into the abdominal cavity. The contents of the bowel or rectum spill into the abdominal cavity, an area of the body that is normal sterile or completely free of bacteria. With the spillage of billions of fecal bacteria into the abdominal cavity, the lining of the abdominal cavity becomes immediately inflamed as the body begins its desperate fight to stop the infection. The pain of acute peritonitis is usually treated with highly potent opioid pain medication that is administered intravenously for rapid onset of the pain-relieving properties. Here, when Plaintiff JAMES WATERS was finally seen by paramedics at his home, an IV line was immediately placed and JAMES WATERS was appropriately treated with intravenous fentanyl, a medication that is 1000 times more potent than morphine.

47. It is widely accepted that American medicine has long had a systemic racism problem. In 2008, the American Medical Association (AMA) issued an official policy

for racism in American medicine. Racial disparities with regard to the treatment of acute and chronic pain in Black patients.

48. A landmark study showed that in the Emergency Room, Blacks with long-bone fractures were significantly less likely to receive opioid pain medication than white patients.

49. Numerous medical studies demonstrate that Black patients are less likely to receive pain medication for various painful medical conditions than their white counterparts with the same or similar conditions and diagnoses.

50. Medical studies conducted on VA patients demonstrate that Black patients are less likely to be screened for pain in VA hospitals than white patients.

51. Implicit Association Test (IAT) in health systems has indicated that implicit bias among clinicians leads to discrimination and unequal care for Black patients. Higher implicit bias among healthcare providers is associated with specific behaviors such as failure to make eye contact with patients, using a condescending tone and pitch, discordant word choices, and more top-down directive communication with Black patients.

52. On August 10, 2018, when Plaintiff JAMES WATERS awakened from anesthesia following his colonoscopy and perforation, he was in extremely severe pain, repeatedly ranking his pain as "twelve" (12) on a ten-point scale where "zero" is no pain at all and "ten" is the worst pain imaginable. Defendant VAPSHCS was aware that JAMES WATERS was in extremely severe pain since they requested that he rank his pain and he answered the question.

53.     On August 10, 2018, Defendants FAYED, EKERT, and other VASNHCS personnel failed to make any efforts whatsoever to alleviate JAMES WATERS' extremely severe pain. Specifically, VASNHCS failed to do any of the following:

    a.    Administer opioid pain medications;

    b.    Administer non-opioid pain medications;

    c.    Administer topical pain medications;

    d.    Administer heat;

    e.    Administer ice;

    f.    Administer other physical modalities to treat the pain.

Instead, Defendants discharged JAMES WATERS without any intervention whatsoever to deal with his pain.

54.     On August 10, 2018, JAMES WATERS experienced an unpleasant sensory and emotional experience that was associated with actual tissue damage (pain) and it is extreme and outrageous that Defendants undertook no intervention whatsoever to ameliorate, mitigate, or stop JAMES WATERS' emotional distress. Instead, they simply ignored the extremely severe pain of bowel perforation and acute peritonitis and discharged JAMES WATERS to find his own way home.

55.     Defendants VASNHCS, FAYED, ECKERT, and others, acted with extreme and/or outrageous conduct with the intent, or with reckless disregard, for causing Plaintiff severe and extreme emotional distress, by among other things, by deliberately refusing to treat Plaintiff's extremely severe abdominal pain following the colonoscopy.

56. The deliberate choices of the Defendants to not treat JAMES WATERS' pain was intentional and/or done with reckless disregard to causing Plaintiff severe emotional distress. Please see Declaration of Michael Schatman, Ph.D., attached hereto as **Exhibit 2**.

57. As a result of the intentional infliction of emotional distress, Plaintiff suffered, among other things, severe pain (emotional response to perceived or actual tissue damage), extreme suffering, severe and/or extreme emotional distress, mental anguish, sepsis, shock, blood transfusions, pneumonia, depression, anxiety, and Post Traumatic Stress Disorder (PTSD).

58. As a result of the intentional infliction of emotional distress, Plaintiff incurred past and future medical expenses, past and future hospital expenses, past and future lost income, in an amount in excess of $75,000.00.

59. Pursuant to Nevada law, Intentional Infliction of Emotional Distress (IIED) is an intentional tort, and is not a claim for Professional Negligence pursuant to NRS 41A. A claim for IIED is therefore not subject to the caps on noneconomic damages pursuant to NRS 41A.035

60. It has become necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is entitled to attorney's fees and costs of suit incurred herein.

## REQUEST AND PRAYER FOR RELIEF

Plaintiff requests that the Defendant be cited to appear and answer herein; that upon trial and hearing, Plaintiff have judgment against Defendant the amount of actual damages, both general and special; and for such other and different amounts as he shall show by proper amendment before trial; for pre and post-judgment interest at the applicable legal rate; for all Court costs incurred; and for such other and further relief, at law and in equity, both general and special, to which Plaintiff may show he is entitled to and to which the Court finds deserving.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, and award Plaintiff the following:

a. Actual damages, general and special, in excess of $75,000;

b. Costs of suit;

c. Pre-judgment and post-judgment interest, as provided by law;

d. All other relief the Court deems appropriate.

DATED this 17th day of September 2021.

**LAIRD LAW PLLC**

By _____
DANIAL LAIRD, ESQ.
Nevada Bar No. 11831
8991 West Flamingo Rd., Ste. C
Las Vegas, NV 89147
*Attorney for Plaintiff*