UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| James Leonard Waters,<br><br>        Plaintiff<br><br>v.<br><br>United States of America,<br><br>        Defendant | Case No. 2:21-cv-01719-CDS-EJY<br><br>**Order Granting Motion to Dismiss and Denying Motion to Strike**<br><br>[ECF No. 11] |

      Plaintiff James Waters sues the United States for professional negligence and intentional infliction of emotional distress (IIED) under the Federal Tort Claims Act (FTCA), following a colonoscopy he underwent at a Veterans Affairs (VA) facility in 2018. The government moves to dismiss the IIED claim for failure to state a claim and moves to strike the declaration of a clinical psychologist. Alternatively, the government moves to strike from the complaint certain allegations about systemic racism in the American healthcare system. Because Waters's complaint fails to sufficiently plead an IIED claim and amendment would be futile, I grant the government's motion to dismiss that claim. But I exercise my discretion to deny its motion to strike the declaration because it fails to provide sufficient justification for doing so. And I order the parties to participate in a settlement conference with the magistrate judge to attempt to resolve the sole pending claim for professional negligence.

I.      **Background**

      Waters is a Black veteran with "a complex gastroenterological history due to his long-standing diagnosis of inflammatory bowel disease, specifically, Crohn's Disease." Compl., ECF No. 1 at ¶¶ 12–13; ECF No. 14 at 13.[1] On August 10, 2018, he was scheduled to have an elective

---

[1] Waters's complaint was not filed in compliance with this district's local rules. "Documents filed electronically must be filed in a searchable Portable Document Format (PDF)." LR IA 10-1(b). Further,

colonoscopy at the VA Southern Nevada Healthcare System (VASNHCS) with Dr. Joseph Fayad. ECF No. 1 at ¶ 14. Dr. Fayad performed the procedure "within a very short period of time," but due to Waters's history of gastroenterological issues, "a colonoscopy should have been performed only with extreme caution and care." *Id.* at ¶ 21. Waters alleges that Dr. Fayad "rushed through the colonoscopy and created a large perforation at the mid portion of [Waters's] sigmoid colon." *Id.* at ¶ 22. He contends that he woke up from the procedure in "extreme abdominal pain" and "immediately told VA staff that he was at '12' on a ten-point scale" for pain. *Id.* at ¶ 23. Despite Waters's pain, the medical staff "failed and refused to provide [him] with pain medication," and Dr. Fayad did the same, refusing to administer pain medication or perform diagnostic imaging and ultimately discharging Waters. *Id.* at ¶¶ 24–25.

Waters "could not walk out of the building on his own and requested a wheelchair." *Id.* at ¶ 26. A family member transported him home, where he "continued to suffer excruciating abdominal pain with no relief from over-the-counter medication." *Id.* at ¶ 28. Just hours after his discharge from the VA facility, he called 911 and "was emergently transported by ambulance to University Medical Center[,] where an abdominal radiograph was taken, and [he] was immediately diagnosed with a perforation of the gastrointestinal tract." *Id.* at ¶ 29. He underwent emergency surgery, and "surgeons had to perform a colostomy on" him because of the "severity of the colonic perforation." *Id.* at ¶¶ 29–30. He stayed in the hospital for 17 days and "suffered numerous other complications." *Id.* at ¶ 30.

Waters brings two claims against the government, one for professional negligence (medical malpractice) and one for IIED. ECF No. 1 at 6–12. He attaches to his complaint declarations from two medical professionals: a gastroenterologist named Dr. Joel Chodos and a clinical psychologist named Dr. Michael Schatman. ECF Nos. 1-2, 1-3. The government moves to

---

"[a]n index of exhibits must be provided," and "[a] cover sheet referencing the exhibit or attachment by number or letter must be the first page of each exhibit or attachment **and must include a descriptor of the exhibit or attachment** (e.g., 'Exhibit 1 – Deed of Trust,' not simply 'Exhibit 1')." LR IA 10-3(d), (e) (emphasis added). While no action need be taken with respect to the complaint at this time, Waters is kindly advised to consult and follow the local rules for all future filings.

dismiss the IIED claim, characterizing it as "a disguised and unsupported claim for medical malpractice" and also moves to strike Dr. Schatman's declaration. Mot. to Dismiss, ECF No. 11 at 1–2. Waters opposes the motion and argues that he properly brings separate claims for the intentional tort of IIED and for medical malpractice because the IIED claim sounds in ordinary negligence, not professional negligence, and is thus separate from the medical-malpractice claim. Resp. Br., ECF No. 14.

## II. Legal standards

### a. *Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)*

Dismissal is appropriate under when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.*

### b. *Motion to strike under Rule 12(f)*

Rule 12(f) gives courts discretion to strike from a pleading matter that is redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "Nevada district courts frequently characterize Rule 12(f) motions as

'heavily disfavored,' 'extreme and drastic remedies.'" *Edwards v. Juan Martinez, Inc.*, 506 F. Supp. 3d 1061, 1077 (D. Nev. 2020) (citations omitted).

### III. Discussion

    *A.    Failure to follow the standard of care does not amount to extreme and outrageous conduct.*

In Nevada, the elements of an IIED claim are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress[,] and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025–26 (Nev. 2000) (quoting *Star v. Rabello*, 625 P.2d 90, 91–92 (1981)). The Nevada Supreme Court has looked to California law to define extreme and outrageous conduct as "that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks and citation omitted).

Waters alleges that he "experienced an unpleasant sensory and emotional experience that was associated with actual tissue damage (pain)[,] and it is extreme and outrageous that [d]efendants undertook no intervention whatsoever to ameliorate, mitigate[,] or stop [Waters's] emotional distress." ECF No. 1 at ¶ 54. He further alleges that the defendants "acted with extreme and/or outrageous conduct with the intent, or with reckless disregard, for causing [Waters] severe and extreme emotional distress . . . by deliberately refusing to treat [Waters's] extremely severe abdominal pain following the colonoscopy." *Id.* at ¶ 55. And Waters claims that "[a]s a result of the intentional infliction of emotional distress, [Waters] suffered, among other things, severe pain (emotional response to perceived or actual tissue damage), extreme suffering, severe and/or extreme emotional distress, mental anguish, sepsis, shock, blood transfusions, pneumonia, depression, anxiety, and Post Traumatic Stress Disorder (PTSD)." *Id.* at ¶ 57.

The government argues that the IIED claim should not survive dismissal because it "is a disguised and unsupported claim for medical malpractice," contending that Waters "engages in artful pleading in an effort to circumscribe the noneconomic damages cap" set forth in Nevada's

statutory scheme. ECF No. 11 at 1–2 (citing Nevada Revised Statutes (NRS) § 41A.035). The government also urges that "[a] doctor's decision about prescription medicine is a judgment call that involves benefits and risks. Even where such a call may be found to fall below the standard of care, that is not something beyond all possible bounds of decency and utterly intolerable in a civilized community." *Id.* at 5. Waters rebuts that "[t]he intentional decision to deny [him] pain relief of any kind was not an oversight, a misunderstanding, a computer glitch, a paperwork snafu, a supply issue, a policy decision, or a mistake. [He] explicitly alleges it was deliberate and intentional." ECF No. 14 at 6.

      Waters relies on four Nevada Supreme Court cases to argue that he is permitted to bring both an IIED claim and a medical malpractice claim. *Id.* at 7–11 (citing *Estate of Curtis v. S. Las Vegas Med. Inv'rs, LLC*, 466 P.3d 1263 (Nev. 2020); *Szymborski v. Spring Mountain Treatment Ctr.*, 403 P.3d 1280 (Nev. 2017); *S. Nev. Adult Mental Health Servs. v. Eighth Judicial Dist. Ct. of State*, 2016 WL 2985037 (Nev. 2016) (unpublished); *DeBoer v. Senior Bridges of Sparks Family Hosp., Inc.*, 282 P.3d 727 (Nev. 2012)). Notably, none of these four cases even mentions IIED. Three of the cases (*Estate of Curtis*, *Szymborski*, and *Southern Nevada Adult Mental Health Services*) concern the interpretation of a Nevada statute—NRS § 41A.071—which requires that all actions for professional negligence must be filed with an affidavit from a medical expert that identifies the specific alleged negligent acts "in simple, concise[,] and direct terms." NRS § 41A.071.[2] And the fourth case, *DeBoer*, concerns "the duty of care owed by a medical facility when performing **nonmedical functions**." *DeBoer*, 282 P.3d at 729 (emphasis added). Waters seemingly argues that because the Nevada Supreme Court distinguishes between ordinary negligence and professional negligence within this line of cases, his IIED claim should survive dismissal because it sounds in ordinary negligence, unlike his separate claim for professional negligence.

---

[2] "NRS 41A.071's purpose is 'to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based on competent expert medical opinion.'" *Washoe Med. Ctr. v. Second Jud. Dist. Ct.*, 148 P.3d 790, 794 (Nev. 2006) (quoting *Szydel v. Markman*, 117 P.3d 200, 204 (Nev. 2005)).

In *Estate of Curtis*, the most recent of the four cases, a patient died after mistakenly receiving the wrong drug while she resided in a nursing home. *Estate of Curtis*, 466 P.3d at 351. In that case, the Nevada Supreme Court assessed whether the "common knowledge exception" to NRS § 41A.071's affidavit requirement applied and thus whether a jury could conclude that the mistake in administering the wrong drug—and separately, the alleged failure to later monitor the patient—was "negligent without the benefit of expert testimony." *Estate of Curtis*, 466 P.3d at 351. In *Estate of Curtis*, the plaintiff did not file an affidavit from a medical expert. *Id.* The crux of the case dealt with whether the estate's claims sounded in ordinary or professional negligence and thus whether they were barred for failure to file an expert's affidavit.[3]

The Nevada Supreme Court urges that "[i]n determining whether such a claim sounds in ordinary or professional negligence, we 'must look to the gravamen or substantial point or essence of each claim rather than its form.'" *Id.* at 353 (quoting *Szymborski*, 403 P.3d at 1285)). Ultimately, the Court found that the allegations related to the administration of the wrong drug sounded in ordinary negligence, because a layperson would know, without expert testimony, that giving someone the wrong medication amounts to negligence. But it held that the allegations related to the failure to monitor the patient sounded in professional negligence because they "involve[d] medical diagnosis, judgment, or treatment[.]" *Id.* (quoting *Szymborski*, 403 P.3d at 1284). As a result, it affirmed the lower court's decision to grant the nursing home summary judgment as to the failure-to-monitor claim because the plaintiff did not include an expert's affidavit, and it reversed the decision as to the wrong-drug claim because no affidavit was needed.

Waters's reliance on these cases is misplaced. Whether the IIED claim is one for professional or ordinary negligence is beside the point. The threshold question at this stage of the litigation is whether Waters's complaint states a claim upon which relief can be granted.

---

[3] Waters filed two affidavits from medical experts, one from gastroenterologist Dr. Chodos and another from clinical psychologist Dr. Schatman. ECF Nos. 1-2, 1-3.

6

Fed. R. Civ. P. 12(b)(6). In other words, does he sufficiently allege the elements of an IIED claim? I find that he does not. Waters makes a stretch of an argument and fails to bridge the gap between the facts in his complaint and the claim he seeks to bring. Waters identifies no authority, and I can find none, supporting the proposition that failing to meet the standard of care amounts to extreme and outrageous conduct. Such a theory would expand the reach of IIED claims far beyond what Nevada courts have found them to encompass. While Waters's counsel certainly makes creative arguments in favor of this theory, it is clear that Waters's claim is most properly brought as one for professional negligence. It is well established that IIED "is a very narrow tort with requirements that 'are rigorous, and difficult to satisfy.'" *Snyder v. Phelps*, 562 U.S. 443, 464 (2011) (Alito, J., dissenting) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 12, p. 61 (5th ed. 1984)). Indeed, Waters does not satisfy those requirements here. So I grant the government's motion to dismiss the IIED claim. In doing so, I need not and do not address the government's alternative argument that the allegations of systemic racism should be stricken. Dismissal of the claim renders that request moot, as the language at-issue was contained within the now-dismissed claim.

   B.  *Waters may not have leave to amend his complaint because it would be futile.*

   Under Rule 15(a), "court[s] should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a). "Several factors govern the propriety of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opponent, and (4) futility of amendment." *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (citation omitted). "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (citing *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011)). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

I decline to give Waters leave to amend his complaint as to the IIED claim because it would be futile. As discussed supra, Waters presents no case law supporting his assertion that an IIED claim arises when a medical professional's conduct does not meet the standard of care. And he fails to show how the defendants' actions in this case exceed "all possible bounds of decency." *Maduike*, 953 P.2d at 26 (Nev. 1998). I am not convinced that he could plead such facts and thus find that this case must proceed on the professional-negligence claim only.

        C.        *I decline to strike Dr. Schatman's declaration under Rule 12(f).*

In his declaration, Dr. Schatman provides information about his education, experience, and qualifications, and he explains that he reviewed Waters's medical records and conducted a virtual clinical interview of Waters. ECF No. 1-3 at 2–3. He opines that the VASNHCS "fell below the standard of care by failing to investigate a potentially lethal peritonitis resulting from perforation during a colonoscopy" and by "failing to provide any, much less adequate, analgesia by a distressed patient post-procedure." ECF No. 1-3 at 3. He concludes that "[a]s a result of the breaches in the standard of care by the [VASNHCS], Mr. Waters has gone through significant physical pain, as well as ongoing emotional stress[,] which is extremely refractory to treatment. The VA's mental health providers have done little, if anything, to address his emotional distress, resulting in chronification." *Id.* at 4.

In tandem with its motion to dismiss the IIED claim, the government moves to strike Dr. Schatman's declaration. ECF No. 11 at 1–2, 7 ("The United States respectfully requests that the [c]ourt dismiss the second cause of action for [IIED], as well as strike the [d]eclaration of Michael Schatman, Ph.D. that relates to such putative claim."). Under Rule 12(f), the relevant inquiry in deciding a motion to strike is whether the material in question is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). But I need not even reach that analysis here, as the government fails to articulate a single reason why Dr. Schatman's declaration should be stricken. ECF No. 11 at 1–2, 7 (repeatedly urging me to strike the declaration without explaining why). The government provides the legal standard for motions

to strike (*id.* at 3–4)—presumably because it alternatively seeks to strike Waters's allegations about systemic racism in American healthcare—but provides no argument in support of its position as to Dr. Schatman's declaration.

"As the Seventh Circuit observed in its now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs.'" *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). And the Ninth Circuit "has repeatedly admonished that we cannot 'manufacture arguments for an appellant" or party. *Id.* (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Because Rule 12(f) gives courts the discretion to strike material, because Rule 12(f) motions are "heavily disfavored," and because the government has proffered no reason why I should strike the doctor's declaration, I exercise my discretion to deny the government's motion to the extent that it seeks to strike Dr. Schatman's declaration. *Edwards*, 506 F. Supp. 3d at 1077.

## IV. Conclusion

IT IS THEREFORE ORDERED that the government's motion to dismiss **[ECF No. 11] is GRANTED in part and DENIED in part**. The IIED claim is dismissed with prejudice, but the government's motion to strike Dr. Schatman's declaration is DENIED.

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference** between the parties. The parties' deadline for filing the proposed joint pretrial order is stayed until 20 days after the settlement conference, should this case not resolve.

DATED: March 14, 2023

_____
Cristina D. Silva
United States District Judge